IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OLIN JOSE GONZALES, 1409326, | § | |
| Petitioner, | § | |
| | § | |
| | § | CASE NO. 3:11-CV-2613-P |
| vs. | § | |
| | § | |
| RICK THALER, DIRECTOR TDCJ-CID, | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference from the district court. The Findings, Conclusions and Recommendation of the Magistrate Judge are as follows:

**I. Procedural Background**

Petitioner challenges his conviction for capital murder. *State of Texas v. Olin Jose Gonzales*, No. F-0540682-U (291st Jud. Dist. Ct., Dallas County, Tex., November 17, 2006). Petitioner was sentenced to life in prison. On July 10, 2008, the Fifth District Court of Appeals affirmed the conviction and sentence. *Gonzales v. State*, No. 05-06-01709-CR (Tex. App. – Dallas 2008, pet. ref'd). On January 28, 2009, the Court of Criminal Appeals refused Petitioner's petition for discretionary review. PDR No. 1087-08.

On July 24, 2009, Petitioner filed a state petition for writ of habeas corpus. *Ex parte Gonzales*, Application No. 75,539-02. On September 28, 2011, the Court of Appeals denied the

petition without written order.

On October 3, 2011, Petitioner filed this federal petition. He argues:

1. He received ineffective assistance of counsel because:

   (A) counsel had a conflict of interest;

   (B) counsel failed to conduct a pre-trial investigation;

   (C) counsel failed to confer with Petitioner;

   (D) counsel failed to present a defense; and

   (E) counsel failed to present exculpatory evidence;

2. There was no evidence to support capital murder;

3. The trial court violated Petitioner's confrontation rights; and

4. The trial court erred in admitting Petitioner's two confessions.

On March 19, 2012, Respondent filed his answer. On April 3, 2012, Petitioner filed a reply. The Court now determines the petition should be denied.

## II. Factual Background

The following factual background is taken from the opinion of the Fifth District Court of Appeals.

> The evidence showed that at one time [Petitioner] lived at Care Center Ministries and supervised a lawn crew for the Center. His responsibilities included taking care of [Robert] Jones's lawn and the lawn of one of Jones's neighbors. About two years before the murder, [Petitioner] moved and was no longer the crew leader in charge of those lawns. The new crew leader testified that he saw [Petitioner] back in Jones's neighborhood within a day or two of the murder. He thought [Petitioner] was trying to steal his business, but, when he found out that Jones had been murdered, he reported the incident to police. Jones's neighbor testified that [Petitioner] showed up at his door about a week or two before the murder asking for money. He thought it was very unusual and mentioned it to the police. The evidence also showed that [Petitioner] pawned a man's gold wedding ring within hours after the murder, Jones's gold wedding ring was missing from his finger, his family never found the ring in the house, Jones was never known to

take the ring off, and the pawned ring looked similar to Jones's wedding ring. Police also recovered Jones's address book from [Petitioner's] truck. In addition to the statements [Petitioner] gave to the police in which he confessed to the crime, he confessed to his cell mate.

On the other hand, [Petitioner] testified that he purchased the wedding ring from someone else who had been initially charged with the crime, and that there were no fingerprints or DNA evidence to link [Petitioner] to the crime.

*Gonzales v. State*, slip op. at 3.

### III. Discussion

**1. Standard of Review**

The pertinent terms of the Antiterrorism and Effective Death Penalty Act of 1996 (the AEDPA), 28 U.S.C. § 2254 provide:

> (d) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

*See* 28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 380-84 (2000). Under the "unreasonable application" clause, a federal

court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

## 2. Ineffective Assistance of Counsel

Petitioner claims he received ineffective assistance of counsel. To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

Even if counsel is proven deficient, a petitioner must prove prejudice. To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id*. "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id*. (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

### A. Conflict of Interest

Petitioner argues his counsel was ineffective because she had a conflict of interest. He states his counsel was elected to be a state judge during her representation of Petitioner, although

she did not take office until after Petitioner's case was over.

A petitioner alleging a conflict of interest must show a reasonable probability that the conflict "prejudiced the defense, undermining the reliability of the proceeding." *United States v. Garza*, 429 F.3d 165, 171 n.3 (5th Cir. 2005) (quoting *Beets v. Scott*, 65 F.3d 1258, 1273 (5th Cir. 1995) (en banc)). Petitioner does not explain how his counsel's election created a conflict of interest that prejudiced the defense. This claim should be denied.

### B.     Pre-Trial Investigation

Petitioner argues his counsel was ineffective because she failed to conduct a pre-trial investigation. He states that if counsel would have investigated, she could have: (1) objected that the knife belonged to Drexel Washington; (2) impeached witness Clinton Case with evidence that the victim's lawn was last mowed on March 23rd, 2005, not on March 30, 2005, when Case claimed to have seen Petitioner at the victim's house; (3) called Yevette Wilkerson as a witness to Drexel Washington selling the gold wedding ring to Petitioner; and (4) called Petitioner's landlord to testify about a connection between Washington and the victim on the week of March 23, 2005.

The record shows that the knife used in the murder was never located. (Trial Tr. Vol. 5 at 118, 128.) While defense counsel did argue that someone else committed the murder, Petitioner has failed to show his counsel was deficient for failing to argue that the unlocated murder weapon belonged to Washington.

The record shows that Clinton Case testified he mowed the victim's yard on March 30, 2005, which was the day before the murder. (Trial Tr. Vol. 4 at 203.) Case testified he saw Petitioner in the victim's front yard on that day and talked to Petitioner. (*Id*.) Petitioner argues

that Case's employment records would show that he mowed the victim's yard on March 23, 2005, and he therefore could not have seen Petitioner on March 30, 2005. In support of his claim, he attaches a police incident report stating that Jeremy Crane, who worked for Case's employer, contacted officers and told them his yard crew saw Petitioner in the victim's front yard "on what he believed to be 03/23/05." (Pet. Ex. D.) The incident report also states, however, that police interviewed Case, and Case stated he saw Petitioner at the victim's house on March 30, 2005, when Case was there mowing the victim's yard. (*Id*.) Petitioner has failed to submit any evidence that Case's employment records would show he worked at the victim's house on March 23, 2005, rather than March 30, 2005. Petitioner's claim should be denied.

Further, Petitioner has failed to show his counsel was ineffective for failing to call Yevette Wilkerson or his landlord as a witness. He has not shown that either of these witnesses would have been willing to testify at trial and would have testified favorably to the defense. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (stating that to establish the requisite *Strickland* prejudice, Petitioner must show that the testimony would have been favorable); *see also See Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1986) ("hypothetical or theoretical testimony will not justify the issuance of a writ . . . ."). These claims should be denied.

### C. Failed to Confer

Petitioner argues his counsel was ineffective because she failed to sufficiently confer with him. He states counsel: (1) agreed to extensions of the trial date when he told her not to agree; (2) did not listen when Petitioner stated he knew one of the venire members; (3) did not talk with him about the case; and (4) did not present evidence and ask questions at the suppression hearing.

On state habeas review, defense counsel submitted an affidavit stating that she conferred with Petitioner by telephone and least twice and met with him six additional times. (*Ex parte Gonzales* at 8.) In addition she met with Petitioner for his examining trial. (*Id*.) Counsel stated she did not present evidence or ask questions at the suppression hearing because she did not want the state to know their arguments before trial. (*Id*. at 9) Counsel stated she did not believe the judge would suppress Petitioner's statements. Her strategy was to therefore argue to the jury that Petitioner's statements were involuntary. (*Id*.) Counsel stated she objected to each extension of the trial, but was overruled by the judge. (*Id*. at 10.) Counsel also stated she did listen to Petitioner's claim that he knew one of the venire members. Counsel objected to this person and the court sustained her objection. (*Id.*) The state court found defense counsel credible and denied Petitioner's claims. Petitioner has failed to show the state court's decision to deny this claim was unreasonable.

### D.     Present a Defense

Petitioner argues defense counsel was ineffective because she failed to present a defense. He states counsel allowed the state to read his police statements into the record, did not object to evidence that Drexal Washington had a pocket-knife, did not argue that the ring Petitioner sold at a pawn shop did not belong to the victim, did not argue that Washington had one of the victim's checks, and did not argue that Washington killed the victim.

Counsel filed a motion to suppress Petitioner's police statements, which the court denied. Counsel also argued to the jury that Petitioner's police statements were not voluntary. Petitioner has failed to show how his counsel could have excluded his police statements from evidence.

Petitioner fails to show his counsel was ineffective for not objecting to evidence that

Washington had a pocket-knife. Police determined that Washington owned a pocket-knife, but that the knife was not the murder weapon. Petitioner does not state the basis for objecting to this evidence.

Petitioner claims his counsel should have argued that the ring he sold at the pawnshop was not the victim's ring. Counsel, however, did argue that the state failed to prove the ring belonged to the victim. The record shows that the victim's son testified that: "To the best of my recollection, that looks like what I remember his wedding ring being." (Trial Tr. Vol. 5 at 31.) Defense counsel then moved for a directed verdict on capital murder arguing that the state failed to show that a burglary occurred because the ring was not positively identified. (*Id*. at 33.) The court denied the motion. (*Id*.) Petitioner has failed to show his counsel did not argue that the ring did not belong to the victim.

Petitioner argues his counsel should have argued that Washington had one of the victim's checks and that this showed Washington killed the victim. The record shows, however, that in both of Petitioner's police statements, he admitted stealing the victim's checks and giving a check to Washington to see if he could cash it. (*Ex parte Gonzales* at 13-22.) Petitioner has failed to show his counsel was deficient.

### E. Exculpatory Evidence

Petitioner argues his counsel was ineffective because she failed to present exculpatory evidence by presenting certain witnesses. He states: (1) counsel should have asked Washington whether Petitioner killed the victim; (2) counsel should have interviewed Yevette Wilkerson who would have testified that Washington sold Petitioner a gold ring and that Washington was trying to cash one of the victim's checks; (3) counsel should have subpoenaed Jeremy Crane to show

that Clinton Case mowed the victim's lawn on March 23, 2005, instead of March 30, 2005; and (4) counsel should have argued at the suppression hearing that Petitioner's police statements were involuntary.

Petitioner submits no evidence that Washington, Yevette Wilkerson or Jeremy Crane would have testified favorably for the defense. As discussed above, hypothetical testimony will not support habeas relief. *See Alexander*, 775 F.2d at 602 (5th Cir. 1985). These claims should be denied.

Also, defense counsel submitted an affidavit on state habeas review stating it was trial strategy not to present evidence at the suppression hearing. (*Ex parte Gonzales Supp*. at 9.) Counsel did not want to inform the state of the defense's arguments before trial. (*Id*.). Petitioner has not shown that his counsel's conduct fell outside of reasonable trial strategy. *See Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992).

**3.      Insufficient Evidence**

Petitioner argues there was no evidence to support the conviction. Respondent argues this claim is procedurally barred because Petitioner failed to raise the claim in state court. On direct appeal, Petitioner argued only that the evidence was factually insufficient to support the conviction. The Texas Court of Criminal Appeals no longer recognizes a claim of factual insufficiency of the evidence, and now only considers the legal sufficiency of the evidence. *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010). It is therefore not clear whether the Court of Criminal Appeals would consider this claim exhausted. In any event, a federal court may address unexhausted § 2254 claims and deny those claims on the merits. *See* 28 U.S.C. § 2254(b)(2). The Court therefore considers the merits of Petitioner's claim.

Federal habeas review of an insufficiency of the evidence claim is extremely limited. A federal court may not disturb a conviction in a state criminal proceeding unless no rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Gibson v. Collins*, 947 F.2d 780, 781 (5th Cir. 1991). The evidence must be viewed in the light most favorable to the verdict. *Jackson*, 443 U.S. 319; *Gibson*, 947 F.2d at 781.

Under Texas law, one way the state may prove capital murder is by proving that a defendant intentionally committed murder while in the course of committing or attempting to commit a burglary. TEX. PENAL Code § 19.03(a)(2).

In this case, Petitioner testified that he knew the elderly victim because he used to mow the victim's lawn. (Trial Tr. Vol. 5 at 35.) Clinton Chase testified he saw Petitioner at the victim's house the day before the murder. (Trial Tr. Vol. 4 at 202.) The victim's neighbor, Leonard Cocks, testified that a week or two before the murder Petitioner came by his house and asked if he could borrow money. (*Id.* at 190.) Petitioner stated in his second written confession that he went to the victim's house to steal money. (*Ex parte Gonzales* at 31.) He stated he entered the house through an unlocked back door. (*Id.* at 32.) He then got a knife from the kitchen. (*Id.*) He went to an office in the house and began looking for money. (*Id.*) The victim then came into the room and Petitioner stabbed him. Petitioner heard the victim gasping for air. (*Id.*) Petitioner went to the victim's bedroom and grabbed the bed sheets and used the sheets to strangle the victim. (*Id.* at 32-33.) He also used a sheet to carry a jewelry box, checks and other papers out of the house. (*Id.* at 33.) He stated the victim was dead when he left the house. (*Id.*)

The victim's gold wedding ring was missing. Petitioner admitted he sold a gold wedding

ring to a pawn shop for twenty dollars, but stated he bought the ring from Drexel Washington. (Trial Tr. Vol. 5 at 57.) Police officers found the victim's address book in Petitioner's truck. (Trial Tr. Vol. 3 at 124, 127-28.)

Viewing this evidence in a light most favorable to the verdict, the Court finds Petitioner has not shown the evidence was insufficient to support the conviction. Petitioner's claim should be denied.

**4.      Trial Error**

Petitioner argues the trial court erred when it violated his confrontation rights and when it admitted his two police statements into evidence.

Petitioner argues his confrontation rights were violated when the trial court allowed the state to read his first police statement to the jury. In that statement, Petitioner alleged that he and Drexel Washington committed the murder and burglary. The Sixth Amendment's Confrontation Clause states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI. The reading of Petitioner's own statements does not violate the Confrontation Clause. This claim should be denied.

Petitioner also argues the court erred in admitting his two police statements because the statements were not voluntary. Proving that a confession was coerced requires showing that the confession "resulted from coercive police conduct and it is essential that there be a link between the coercive conduct of the police and the confession of the defendant." *Hopkins v. Cockrell*, 325 F.3d 579, 583 (5th Cir. 2003). The court must evaluate "whether a defendant's will was overborne by the circumstances surrounding the giving of the confession. This inquiry takes into consideration the totality of all the surrounding circumstances – both the characteristics of the

accused and the details of the interrogation." *United States v. Turner*, 674 F.3d 420, 432 (5th Cir. 2012) (citations omitted).

In this case, Petitioner claims he was coerced into signing the two confessions because Detective Phillips yelled at him, told him he would receive the death penalty and touched the veins on Petitioner's arms. (Trial Tr. Vol. 5 at 62, 87.) He states the police took his clothes and he had to wear a paper gown. (*Id*. at 41.) He states he signed the confessions because Detective Phillips told him the confessions would be used against Washington and Petitioner wanted to help Detective Phillips. (*Id*. at 62, 68, 93.) He claims Detective Phillips told him the interrogation was being recorded and the recording would override Petitioner's written statement. (*Id*. at 63.) He stated he was exhausted and that he was interrogated for "maybe a couple of hours" before he signed the written statements. (*Id*. at 87.)

Detective Phillips testified that he never told Petitioner that Washington was a suspect or that he needed Petitioner to sign the confessions to implicate Washington. (*Id*. at 103.) Detective Phillips testified that Washington had been cleared as a suspect prior to Petitioner's interrogation. (*Id*.) Phillips testified that he wrote down only the statements Petitioner made and that he did not coerce him into making any statements. (*Id*. at 103.) He testified that Petitioner did not appear sleepy or incoherent. (*Id*. at 102.)

The record shows Petitioner admitted that Detective Phillips read him his *Miranda* rights and that Petitioner initialed and signed a copy of the *Miranda* rights. (*Id*. at 85.) Petitioner stated he had completed the twelfth grade and that he could read, write and understand English. (*Ex parte Gonzales* at 22.) Petitioner admitted he did not request an attorney. (*Id*. at 66.) Petitioner admitted he signed each page of both confessions. (*Id*. at 89-91.) At the end of the second

confession, Petitioner stated in his own writing: "Inv. Phillips read it to me and it is true. I do not wish to make any changes." (*Ex parte Gonzales* at 22.) Petitioner also stated that he thinks he told his jail cellmate that he committed the murder "because it's no secret that I know [the victim.]" (*Id*. at 70.)

The court finds Petitioner has failed to show that the state court's decision denying this claim was unreasonable. Petitioner's claim should be denied.

## 5. Summary

Petitioner is lawfully restrained because he has failed to prove that he has been denied a constitutionally protected interest. Accordingly, the state courts' determination to deny relief is not contrary to or does not involve an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

## **RECOMMENDATION**

This Court recommends that the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be DENIED.

Signed this 15th day of April, 2013.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).